25-2994 Eastern Missouri United States v. Charles Anderson Mr. Glazeman, thank you for accepting the appointment in this case and you may proceed. Of course, Your Honor. May it please the Court, my name is Lucas Glazeman, I'm here for Mr. Charles Anderson. Mr. Anderson pled guilty to two counts of falling in possession of a firearm. He did so conditionally and that he would reserve his right to file a motion to suppress with this Court as to the recovery and the search of his vehicle that resulted in those two firearms being found. Mr. Anderson's Fourth Amendment rights to be free from unreasonable searches and seizures were violated in this case. He was subjected to an unlawful weapons frisk upon stepping out of his vehicle on this day by a Maryland Heights, Missouri police officer. The government has up to this point agreed that that was a violation of his Fourth Amendment rights as did the District Court in affirming the Magistrate Judge's ruling that his rights were violated under the Fourth Amendment when he was subjected to that weapons search. What we're here to discuss today, Judge, and should the Court have questions as to the statement made back at the police station, I'm happy to answer those questions. I'm going to focus mainly today, Judge, on the consent to search and the search of the vehicle that resulted in the firearms that were found and to which he ultimately pled guilty. We're here to discuss what the remedy for Mr. Anderson should be or is upon the violation of his Fourth Amendment rights as a result of the weapons search. Mr. Anderson's car, well Mr. Anderson was requested consent to search his vehicle seven minutes after this illegal search, nine minutes after the illegal search his car was searched and these weapons were found. It is true that that search was by consent. However, we do not believe that consent sufficiently purges the taint of the Fourth Amendment violation that was the illegal weapons search. We believe that the Court, in addressing whether or not the taint of that violation was purged, needs to look at whether or not there's any intervening circumstances or any other attenuation from the Fourth Amendment violation to the actual search of the car in this case. We do not believe that there is sufficient attenuation. How did the frisk bear any relation to the later event? So Judge, I believe the frisk was part of an overall, for lack of a better term, criminal investigation that kind of started at the point when the traffic stop started. The officer testified during the suppression hearing that upon making contact with Mr. Anderson as Mr. Anderson was getting his insurance out of his center console, it's at that point in time in his mind this turned from a traffic stop to a criminal investigation. When Mr. Anderson requested to get out of the car to provide his wallet, he then performed the frisk. We believe that this frisk was part of an ongoing criminal investigation that resulted in the request for consent and the ultimate search of his vehicle. This was one step, the next natural progress of this criminal investigation, we believe it was all part of the same investigation that this officer was doing at that time. Was there any causal nexus though between the frisk and the later events? I believe so, Judge. So the frisk occurred as soon as he stepped out of the vehicle. At that point in time, Mr. Anderson was directed to stand at the back of that vehicle. One could argue that the frisk was still ongoing because he still had Mr. Anderson's property at that point in time. But as they were discussing in the back of the vehicle, and as he was still holding on to his property and standing where he was directed to stand, he was then questioning about the inside of the vehicle. So it's our argument that this is all part of the same sequence of events, that there is a nexus there between that search that was one step and a continuing step of these investigations that the officer was performing. Again, that started with a suspicion when he made contact and ultimately ended in with a request for consent and a search of the vehicle. You know, by the time that he asked for consent, there's a lot of information that the officer has at that point. Nancy's already admitted that there is a gun in the console, that Anderson has already admitted that he's a two-time convicted felon with no right to possess. I mean, at that point, it kind of looks like probable cause is clearly established. So if you do not get to the nexus between the search, the pat-down search, and understand this, it's a pat-down search after somebody says he has a weapon, it's a lawful weapon, but he says there's a knife in my pocket, that doesn't mean that there's no other weapons on him. And at that point, you know, he feels something and he pulls the knife out. I mean, maybe it's not appropriate, but how does that cause all the rest of it? I mean, you know, Anderson's the one that says, you know, can you get my other phone so I can find my proof of insurance? And then Nancy kind of acts oddly to avoid having anyone see what's inside the console. I mean, there's just a lot of things going on, and I don't see how that's caused by a pat-down search that unlawfully seizes a knife. And I understand you've gotten the memorandums here. It's my understanding that the request or the consent was given prior to the conversation that occurred in which he revealed that he was a convicted felon or where it was revealed that there was a firearm in the vehicle. That is my understanding. My review of the video showed me that, Judge. But, you know, to go back to the nexus of it all, I mean, I believe there's a nexus in the sense that Mr. Anderson is still under the influence of this initial Fourth Amendment violation. I believe it's all one deal because he's out of the vehicle. He's searched. Now, I'm, of course, the district court and the magistrate judge have found that that was a constitutional violation. And I'm running with that, Your Honor, and I'm not obviously contesting that portion of it. But we're really talking about what's the remedy for that. And so I think when you have that constitutional violation, he's standing at the back of the car. He's being already questioned about what's inside the car before he's even finished giving him back his property or finished finding his insurance. And it was kind of a hectic situation where the insurance is on one phone and he needs the other phone for a hot spot. I would contest the idea that that was a subterfuge attempt to delay providing the insurance or to delay the search. I think that this questioning and that this consent all kind of occurred at the back of the car where it was a highly police-dominated atmosphere, as was the pat-down search. It was all part of the highly police-dominated atmosphere. There was four, maybe five officers on scene. He was standing between his car and a police cruiser with other cars on the side. There was a barking police dog in the back of the car that he was in front of. He's being questioned and peppered about what's going on inside the car. Admittedly, Mr. Anderson is not a lawyer. He didn't have any time to consult with a lawyer. He wasn't consulting even really with Mrs. Anderson, who was up at the passenger seat. So this happened very quickly. And certainly that highly police-dominated atmosphere, I think, also contributed to why he gave consent. And why that consent ultimately did get to the heart of my argument, as I'm getting close to my time here, is why that consent is not an intervening circumstance that would otherwise purge the taint of that Fourth Amendment violation. So taking that Fourth Amendment violation at face value, we have the temporal proximity. We have the consent. The consent is not sufficient to purge the taint. And then, of course, the third problem, which I'll briefly just touch on before I reserve the rest, would just be the flagrancy of the police officer. Now, I touched on it a little bit at the beginning of this argument in that the flagrancy that I contend is that this is a criminal investigation from the minute he saw Mr. Anderson reach into the glove box. It was no longer a traffic stop at that point. And that the frisk was not because of anything he said about what was in his pocket or anything that he did. It was about furthering that criminal investigation. And I will reserve the rest of my time for rebuttal. But I would ask the court, if you don't hear from me again, to reverse and remand this case for further proceedings. Very well. Thank you for your argument. Ms. Schneider, we'll hear from you. Good morning, Your Honor. May it please the court. My name is Tori Schneider and I represent the United States. A pat search that revealed a legal pocket knife was not the but-for cause of law enforcement's later seizure of firearms or Mr. Anderson's incriminating statements. And even if this court were to find that it was, it was sufficiently attenuated. Judge Calton, as you were asking, Mr. Glazeman, there is absolutely nothing about finding that pocket knife that is the but-for cause or causal nexus to Mr. Anderson nine minutes later consenting to a search of his vehicle. The pocket knife was not seized and it was not discussed again. There is simply no world in which the finding of that pocket knife caused the consent in this case to have been given. And Mr. Anderson makes no effort in his brief to demonstrate that there was. The counsel seems to be arguing that the totality of the circumstances were so coercive that the consent really wasn't valid. Yes, Your Honor. And as the R&R indicated, the magistrate judge found in the R&R that while there were four or possibly five officers on scene, only one of them interacted with Mr. Anderson. The rest stood back. And that the interaction between the officer and Mr. Anderson was conversational and polite. They even engaged in joking. So the fact that there were a number of officers does not render this situation coercive. And from what I gather from counsel's argument is simply a chronology of the events. And just simply that it happened and that it happened in the course of this traffic stop is not a causal or but-for connection. Well, it might be a little more than that. It might be the fact that he was illegally searched contributed to a coercive environment. Possibly. However, as Judge Erickson indicated in his questioning, it is the government's position that that it is sort of our position that that was not an illegal pad search. We did not... It's sort of your position. Well... In what sense? Your Honor, as... You could have argued that it was. Well, we could have. However, this was not an argument that was previously raised. This argument, this theory of suppression was not raised until the objections to the R&R, Your Honor. And so... No, I mean you could have argued on appeal that we should affirm because there wasn't even an unlawful pad now. Yes, Your Honor. I should have put that in my brief. Well, I'm not saying... You're saying now you should have. I agree. Yes, Your Honor. Yes, Your Honor. I'm not taking that view. I'm just suggesting that that would have been the way you could have raised it if you were so inclined. Yes, Your Honor, and I apologize for not doing that. However, I do believe that the record supports the fact that prior to the pad down, Mr. Anderson admitted that he was armed. So I do believe that the court could affirm on that basis, although we didn't ask for that in our brief. Does carrying a legal pocket knife constitute being armed? Yes, Your Honor, I believe a knife would constitute being armed. Again, so we don't believe there's been any nexus shown. However, if there is, any taint has been purged. In this case, we have the three factors. The elapsed time is approximately nine minutes from the pad search to the consent. And this court has stated in multiple cases that that is not an insufficient amount of time. We then have intervening circumstances, namely the voluntary consent of Mr. Anderson, which although counsel may be arguing that the circumstances were coercive with all the officers, he is not actually challenging the voluntariness of his consent here before this court. And then the purpose and flagrancy of the misconduct simply does not rise to the level of applying the exclusionary rule in this case. Even if at best or worst case scenario, if the officer was mistaken about having reasonable suspicion under strife, simply being mistaken about whether you had the appropriate cause is not a reason to exclude evidence. There would be no deterrent effect if the court were to exclude evidence in this case because it simply was just a mistaken good faith belief. Therefore, all the factors do weigh in favor of attenuation. If there are no further questions, the government does respectfully request that this court affirm Anderson's conviction. Thank you. Thank you for your argument. Rebuttal? Yes, Your Honor. Thank you, Judge. The nexus here, I think, even listening to the government's argument, I think it's more than just a timeline. The officer conducted an illegal weapons risk, found a legal pocket knife, and then asked to search the car for yet more weapons. So he's questioning about weapons, finds a legal pocket knife, and now he's asking for consent to search a vehicle for more weapons. Regarding attenuation, I'm not waving or I'm not stipulating to the idea that he voluntarily consented in the way that the law would say he legally voluntarily consented. I think even the cases that the government cites in their brief say that consent, just because somebody consents, doesn't mean that that consent is an intervening circumstance that would purge the taint of a Fourth Amendment violation. Did he consent? Yes, he did consent to the search of the vehicle, but you need to look at the surrounding circumstances and say was that consent an intervening circumstance that would be the type of intervening circumstance that would purge the taint of the Fourth Amendment violation. And finally, Your Honor, regarding the flagrancy of police conduct, because as you know, deterrence is a big issue and one of the main goals of the suppression law, why we suppress evidence in the first place. I don't know that this was just a mistake and we can't, very few times do you probably have an officer saying in here, yes, I did a weapons search explicitly for the purpose of finding something, not because I had a real belief that he was armed. In this case, you can take what he did say during the hearing, which is, I believed that this was a criminal investigation now and not a traffic stop, and then he does a search and then he asks for consent. So I believe that those circumstances surround with what he told you his intent was during that stop. The court can infer from that that his intent was flagrant, not just a mistake. Thank you. And I'd ask the court to reverse and remand. Very well. Thank you for your argument. Thank you to both counsel. The case is submitted and the court will file a decision in due course. Counsel are excused.